UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DR. ROBERT J. SIEGEL,

    Plaintiff,

    v.

LESTER L. HERSHINOW and
AMY WEISS,

    Defendants.

No. 16 C 4803
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Siegel alleges breach of contract under Illinois law against Defendant Lester Hershinow and tortious interference with contract under Illinois law against Defendant Amy Weiss. Both claims arise out of an agreement Siegel signed to provide a down payment for Hershinow's purchase of a home in 1979. Before me is Defendants' Motion to Dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) for failure to meet the jurisdictional amount in controversy required by 28 U.S.C § 1332(a). For the following reasons, Defendants' motion is granted.

## BACKGROUND

The following facts are taken from the Plaintiff's Amended Complaint. Plaintiff Robert Siegel was at all pertinent times and is a resident of Florida. On February 1, 1979, he entered in an agreement ("the 1979 Agreement") with his sister Vicki Hershinow and Vicki's husband Lester Hershinow. The Hershinows were looking for help purchasing a home in Vernon Hills, Illinois. Pursuant to the agreement, Siegel would contribute $20,000 to cover the down payment for the purchase. Half of that sum was denoted as an investment in the new property, and the

1

other half was denoted as a loan. The $10,000 loan was paid back in full while the investment entitled Siegel to 40% of the net proceeds of the property in the event of a sale. Thirty-six years after signing the agreement, Siegel had the agreement recorded with the Lake County Recorder of Deeds in October 2015.

On December 21, 2015, Lester Hershinow conveyed the property to a purchaser for the sum of $185,000. Siegel has sought a portion of the sale proceeds, pursuant to the 1979 Agreement, but Hershinow has not made any payment.

Lester Hershinow resides in a nursing home, and his wife Vicki has passed away. Lester's daughter, Defendant Amy Weiss, manages his finances. On September 21, 2015, Siegel emailed Weiss to inform her of the 1979 Agreement. Weiss retained a law firm to review the agreement, and the law firm informed Siegel by letter that Weiss would not be providing him with any sale proceeds. In the letter, submitted by Siegel with the Amended Complaint, Weiss's attorney gave two explanations for why Weiss would not honor the 1979 Agreement. First, the attorney argued that the agreement is unenforceable as the statute of limitations had run. Second, Weiss's attorney asserted that honoring the contract might jeopardize Hershinow's Medicaid benefits. He argued that a payment to Siegel would be considered a "transfer without value" that might prevent Lester Hershinow from qualifying for Medicaid. The attorney noted that Hershinow is ill and in need of full-time medical care.

Siegel filed a complaint on April 29, 2016. He alleged that Hershinow had breached the contract, and Weiss tortiously interfered with that contractual relationship. After Defendants moved to dismiss the initial complaint on the basis of lack of jurisdiction, Siegel filed an Amended Complaint on July 19, 2016.

Defendants moved to dismiss the Amended Complaint on August 8, 2016. Defendant Amy Weiss attached the closing statement from the sale of the Vernon Hills home to Defendants' Motion to Dismiss. According to this statement, after various costs were deducted from the $185,000 purchase price of the home, the net proceeds of the sale amounted to $156,883.86.

## LEGAL STANDARD

Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Jurisdiction based on diversity exists if the amount in controversy exceeds $75,000, and the suit is between citizens of different states. *See* 28 U.S.C. § 1332(a).

When the jurisdictional threshold is uncontested, the Court will accept the plaintiff's good faith allegation of the amount in controversy unless it "appears to a legal certainty that the claim is really for less than the jurisdictional amount." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009). But when the defendant challenges the plaintiff's allegation of the amount in controversy, as is the case here, the plaintiff "must support its assertion with competent proof" and must "prove the jurisdictional facts by a preponderance of the evidence." *Id.*

If the defendant raises a "facial attack" against the complaint, arguing that the plaintiff has not sufficiently alleged a basis for subject matter jurisdiction, the Court is required only to look at the allegations in the complaint when considering a Rule 12(b)(1) motion. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). If the defendant raises a "factual attack" against the complaint, arguing that the complaint is formally sufficient, but there is in fact no subject matter jurisdiction, the Court may properly look beyond the

jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Id*. at 444.

## DISCUSSION

The Defendants bring a factual attack on the Amended Complaint, challenging whether Siegel's claim exceeds $75,000. Siegel makes two arguments for the factual sufficiency of his complaint. First, he argues that his claim for contract damages is worth more than $75,000. Second, he argues that even if the claim for contract damages does not meet the jurisdictional minimum, his claim for punitive damages brings the amount in controversy above $75,000. I consider both these arguments in turn.

**I. Contract Damages**

Even though Siegel alleges both breach of contract and tortious interference with contract, Illinois law only permits Siegel to recover the sum owed under the contract on one of these claims. *See Douglas Theater Corp. v. Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 886–87 (1997) (holding that once a breach of contract had been remedied by specific performance, the plaintiff could not recover on a tortious interference claim predicated on the same breach of contract because recovering twice on the same contract would constitute a "double recovery").

As noted above, Siegel bears the burden of establishing the value of the contract claim beyond the preponderance of the evidence at this stage in the litigation, and the Court may look to evidence beyond the pleadings in considering the claim's value. *McMillian*, 567 F.3d at 844. Siegel must "do more than point to the theoretical availability of certain categories of damages." *Id.* To provide the Court with "competent proof" in support of his amount in controversy assertion, Siegel must provide some facts or evidence to meet his burden rather than purely

4

speculative assertions. *Scott v. Bender*, 893 F. Supp. 2d 963, 973 (N.D. Ill. 2012).

Under 1979 Agreement, Siegel is entitled to "40% of the net proceeds" of the sale of the property. The agreement notes that the net proceeds are determined "after all costs of the sale, the mortgage and taxes have been paid." The Vernon Hills home sold for a purchase price of $185,000. Even before the costs are deducted from this sum, Siegel would only be entitled to 40% of that price: $74,000. This is insufficient to get Siegel's case into federal court. After the costs of the sale are deducted from the purchase price, the net proceeds amount to $156,883.86, bringing Siegel's recovery under the contract down to $62,753.54, also below the jurisdictional threshold required for diversity jurisdiction under 28 U.S.C. § 1332(a).

To get around the fact that 40% of the sale proceeds would not meet the jurisdictional requirement, Siegel argues that the contract claim *could* be worth more, once the parties engage in discovery, and he can "evaluate the accuracy of Defendant's calculation, gauge whether the sale was conducted at arm's length, and determine whether any additional consideration was exchanged." But Siegel has not filed any affidavits or supporting materials that suggest that the closing statement submitted by Defendants is inaccurate, that there was any sort of prior relationship between the sellers and the buyers, or that any additional consideration passed from the buyers to Defendants. Siegel's assertion that these additional factors may have been at work in the transaction is wholly unsupported by any submitted facts. It is mere speculation. When the jurisdictional amount is challenged, speculation does not suffice. Siegel needs to provide competent proof of his claim's value, rather than just the possibility that the value could increase if new facts arise during discovery. He has failed to put forward such proof, thus he cannot establish diversity jurisdiction on his contract claim alone.

**II. Punitive Damages**

Next, Siegel argues that even if the damages under the contract are worth less than $75,000, his claim for punitive damages against Weiss for her interference with the contract brings his claim above the jurisdictional minimum. In his Amended Complaint, Siegel requests punitive damages in excess of $15,000.

When considering a request for punitive damages, the Court must be suspicious of requests that "attempt to circumvent the amount in controversy requirement for diversity jurisdiction by seeking excessive and unrealistic punitive damages." *Smith v. Am. General Life and Acc. Ins. Co., Inc.*, 337 F.3d 888, 893 (7th Cir. 2003). Where punitive damages are relied upon to satisfy the amount in controversy requirement, the Court makes a two-step inquiry. First, the Court must determine whether punitive damages are recoverable under the applicable law. *See LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 551 (7th Cir. 2008). If the punitive damages are available, then subject matter jurisdiction exists unless it is "legally certain" that the plaintiff will be unable to recover the jurisdictional amount. *Id.* In cases where the defendants contest punitive damage allegations, courts "require the plaintiff to support its claim with competent proof, lest fanciful claims for punitive damages end up defeating the statute's requirement of a particular amount in controversy." *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 979 (7th Cir. 2000).

Siegel's tortious interference claim easily meets the first element of this test. Under Illinois law, punitive damages may be awarded when tortious interference with contract is "committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence to indicate a wanton disregard for the rights of others." *Cress v. Recreation Servs., Inc.*, 341 Ill. App. 3d 149, 182 (2003) (citing *Kelsay v.*

*Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978)). But a court can only award punitive damages if the defendant's misconduct is "above and beyond the conduct needed for the basis of the action." *Kritzen v. Flender Corp.*, 226 Ill. App. 3d 541, 554 (1992). The conduct must involve "some element of outrage similar to that usually found in a crime." *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415 (1990).

Having found that punitive damages are available under Illinois law for a claim for tortious interference with contract, I next consider whether Siegel would be able to obtain these damages, given the allegations in his complaint and the additional facts before the court. To determine the availability of these damages, the Court considers what elements are required for Sigel to win his claim for tortious interference and then looks to see if there are allegations or evidence of misconduct beyond these basic elements. To state a claim for tortious interference under Illinois law, a plaintiff must plead "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contractual relationship between the plaintiff and another; (3) the defendant's intentional and unjustifiable inducement of a breach of the contract; (4) a breach of contract by the other caused by the defendant's wrongful acts; and (5) damage to the plaintiff." *Cress*, 341 Ill. App. 3d at 175.

Weiss argues that he has properly alleged a claim for punitive damages because he has alleged that Weiss "acted willfully in advising her father to breach the Agreement with Dr. Siegel, without regard for Dr. Siegel's rights." But this allegation is identical to a third element required for the underlying tort. It establishes Weiss's intentionality in interfering with the agreement. There is nothing in either the Amended Complaint or the attached exhibits that alleges any outrageous behavior or any behavior similar to criminal conduct.

Siegel has submitted the letter from Weiss's attorney, but this letter contains nothing

7

outrageous. In it, Weiss's attorney states his arguments about why the statute of limitations may have run or why Hershinow's Medicaid benefits might be at risk, but there is nothing fraudulent in the letter or anything showing wanton disregard for Siegel's rights. It may well be that the letter shows Weiss intended to violate Siegel's right to payment under the contract. But this goes to one of the basic elements of the tort, rather than something extra required for punitive damages. I find that Siegel has failed to provide the Court with competent proof that his claim merits an award of punitive damages.

## CONCLUSION

Because Siegel's contract claim is worth less than $75,000 and punitive damages are unavailable under Illinois law when Siegel has failed to allege any outrageous conduct, his Amended Complaint does not allege that the amount in controversy exceeds $75,000. This Court does not have jurisdiction over Siegel's case, and Defendants' Motion to Dismiss is granted. The dismissal shall be without prejudice to the refiling of Siegel's claims in an appropriate state court.

*[Signature: James B. Zagel]*

       ENTER:
       James B. Zagel
       United States District Judge

DATE: September 21, 2016